**Joel L. FRANK, on behalf of all those similarly situated,\* Plaintiff–Appellant,**

v.

**Melvyn AARONSON, Alan G. Hevesi, Irene Impellizzeri, Joseph J. Lhota, Sandra March, Luis O. Reyes, Dr., Phyllis Wallach, Individually and as Trustees of the Funds of the Teachers' Retirement System of the City of New York, Defendants–Appellees.**

**No. 1393, Docket 96–9456.**

United States Court of Appeals, Second Circuit.

Argued May 2, 1997.

Decided July 18, 1997.

---

\* Although plaintiff Frank self-designated his Complaint as filed "on behalf of all those similarly situated," he is not an attorney and hence is not permitted to represent a potential class. Nor did the District Court certify this as a class action—it properly considered the case as an individual action.

Joel L. Frank, Marlboro, NJ, pro se.

Paul A. Crotty, Corporation Counsel of the City of New York, New York City (Larry A. Sonnenshein, Susan Sanders and Mordecai Newman, of counsel), for Defendants–Appellees.

Before: MINER and CALABRESI, Circuit Judges, and SHADUR,** District Judge.

SHADUR, District Judge:

Pro se plaintiff Joel Frank ("Frank") appeals from a judgment entered October 25, 1996 in the United States District Court for the Southern District of New York (McKenna, J.) that (1) granted summary judgment in favor of defendants Melvyn Aaronson, Alan Hevesi, Dr. Irene Impellizzeri, Joseph Lhota, Sandra March, Dr. Luis Reyes and Phyllis Wallach (collectively "Trustees"), both individually and as trustees of the Funds of the Teachers' Retirement System of the City of New York ("Funds"), (2) denied Frank's

cross-motion for summary judgment and (3) dismissed Frank's Complaint and hence this action.[1] Frank claims that the District Court erred in holding that the distribution-triggering events of 26 U.S.C. § 403(b)(11)[2] must be satisfied in order for Frank's post–1988 contributions to the Funds to be "eligible rollover distributions" within the meaning of Section 403(b)(8)(A)(i). That ruling rebuffed Frank's effort to compel Trustees to effect a direct rollover of his post–1988 Funds balance to an eligible individual retirement plan pursuant to Sections 403(b)(8) and 403(b)(10). We affirm the judgment of the District Court.

*Background*

Frank is a member of the Teachers' Retirement System of the City of New York (the "System"). Since 1971 Frank has participated in a voluntary tax-deferred annuity ("TDA") program offered by the System. Under that program each System member is permitted to enter into a yearly salary reduction agreement to have a portion of the member's salary put into a TDA account administered by the System. Pursuant to Section 403(b), taxation of both those salary deductions and the accrued earnings on the TDA account is deferred until the year in which amounts are distributed to the member from his or her account.

Understandably Congress has coupled the availability of those tax deferral benefits under Section 403(b) with restrictions on the early withdrawal of such TDA funds. And herein the present dispute lies.

In brief, Frank desires more access to his TDA account funds than Trustees consider to be permitted by law. Specifically Frank hopes to avoid the TDA distribution restrictions of Section 403(b)(11) and to compel Trustees to conduct a "direct rollover" of his post–1988 Fund contributions into another TDA or an individual retirement account

** Honorable Milton I. Shadur, Senior United States District Judge for the Northern District of Illinois, sitting by designation.

1. Although the parties originally cross-moved for judgment on the pleadings pursuant to Fed. R.Civ.P. ("Rule") 12(c), the District Court converted those cross-motions into Rule 56 summary judgment motions upon finding a need to consider submissions outside of the pleadings. Neither party now suggests that conversion to be improper.

2. Further Internal Revenue Code citations will take the form "Section—," referring to the Title 26 numbering.

("IRA"). For Trustees the stakes are high. They fear that giving in to Frank will violate Section 403(b)(11) and applicable Internal Revenue Service ("IRS") rulings, thus risking the loss of Section 403(b) status for the System's entire TDA plan. To evaluate those competing positions it is necessary to take a brief look at the statutory and regulatory provisions at issue.

*Section 403(b)(11)*

To maintain the tax-preferred qualification of the System's TDA program under Section 403(b), Trustees must comply with Section 403(b)(11). That provision, added to the Internal Revenue Code by the Tax Reform Act of 1986 (Pub.L. No. 99–514, tit.XI, § 1123(c)(1), 100 Stat.2085, 2474–75), imposes several alternative requirements to be satisfied before TDA funds attributable to a salary reduction agreement are eligible for distribution:

> (11) **Requirement that distributions not begin before age 59 1/2, separation from service, death or disability.**—This subsection shall not apply to any annuity contract unless under such contract distributions attributable to contributions made pursuant to a salary reduction agreement (within the meaning of section 402(g)(3)(C)) may be paid only—
>> (A) when the employee attains age 59 1/2, separates from service, dies, or becomes disabled (within the meaning of section 72(m)(7)), or
>> (B) in the case of hardship.
> Such contract may not provide for the distribution of any income attributable to such contributions in the case of hardship.

Section 403(b)(11) is applicable to funds contributed to a Section 403(b) plan after December 31, 1988.

*IRS Revenue Ruling ("Rev.Rul.") 90–24*

Although Section 1035(a)(3) provides that "[n]o gain or loss shall be recognized on the exchange of . . . an annuity contract for an annuity contract," the later enactment of Section 403(b)(11) could have been viewed as making such a tax-free exchange impossible. Because Section 403(b)(11) prevents a TDA trustee from distributing any post–1988 contributions and earnings to a participant who

does not satisfy that provision's strict distribution requirements, the initial distribution necessary to effect a Section 1035(a)(3) exchange might perhaps be deemed prohibited. IRS issued Rev. Rul. 90–24, 1990–1 C.B. 97 to address that concern.

Rev. Rul. 90–24 permits a TDA plan trustee to direct a tax-free transfer of all or part of a plan participant's interest in a Section 403(b) plan to a successor Section 403(b) plan, so long as the successor plan's minimum distribution requirements are the same as or more stringent than those contained in the first plan. Taking into account the specific language of Section 403(b)(1) and (11), IRS determined that such a transfer between similarly-restrictive Section 403(b) plans was not a "distribution" from the participants' TDA and hence did not violate Section 403(b)(11)'s restrictive distribution provisions (Rev.Rul.90–24)(emphasis added):

> If an individual transfers funds from a section 403(b)(1) annuity contract containing funds subject to the early distribution restrictions of section 403(b)(11) to another 403(b)(1) annuity contract . . . and the transferred funds continue to be subject to the same or more stringent distribution restrictions, the transfer *is not an actual distribution* under section 403(b)(1) and consequently is not a taxable transfer.

Although Rev. Rul. 90–24 became effective for transfers of Section 403(b) annuities after December 31, 1991, Trustees were unable to effectuate such transfers until an appropriate amendment could be made to the Administrative Code of the City of New York ("Administrative Code") governing the System's plan. Since that amendment became effective on October 24, 1993, Trustees have been able to implement Rev. Rul. 90–24 and to honor participant elections for that type of direct transfer. Frank has elected such transfers annually since the change in the System's plan.

*Section 403(b) Rollovers*

As its name implies, a "rollover" is an additional tax-deferred method of moving annuity assets from one Section 403(b) plan to another or to an IRA. Before enactment of the Unemployment Compensation Amend-

ments of 1992 (the "1992 Act") (Pub.L. No. 102–318, § 521(b)(13), 106 Stat. 290, 311), the rollover provisions of Section 403(b) were quite limited. Section 403(b)(8) allowed for a TDA distribution to a plan participant to be rolled over to another Section 403(b) plan or to an IRA within 60 days of receipt, but only if the distribution were a total distribution payable on account of one of several triggering events, including death, separation from service, reaching age 59 1/2 or becoming disabled. Even more restrictively, a partial balance of at least 50% of the TDA balance that was payable because of death, separation from service or disability could be rolled over only to an IRA.

Then the 1992 Act changed Section 403(b)'s rollover provisions significantly. First, the statute expanded the definition of "eligible rollover distribution" to encompass all distributions from a TDA to a participant—whether total or partial, and without constraint by the quite limited triggering events of the old law—except for long-term periodic payments and certain minimum distributions (Sections 402(c)(4) and 403(b)(8)). Second, the 1992 Act required Section 403(b) plans to provide participants with a "direct rollover option" under which the distributee could elect a trustee-to-trustee transfer of the eligible rollover distribution (Sections 401(a)(31) and 403(b)(10)). Third, to finance the extension of federal emergency unemployment benefits, the 1992 Act imposed a 20% withholding tax on any distribution from a TDA that would be eligible for tax-deferred rollover treatment but as to which the distributee did not properly effectuate such treatment (Section 3405(c)).

Following action by the New York state legislature and a corresponding amendment to the Administrative Code, the provisions of the System's TDA were brought into conformity with the liberalized rollover rules of the 1992 Act. TDA participants in the Funds are thus now afforded two means of effectuating non-taxable transfers between different Section 403(b) plans: (1) a Rev. Rul. 90–24 transfer, under which any portion of a participant's TDA account may be transferred to another Section 403(b) plan so long as the transferee plan is subject to at least as strin-

gent early withdrawal restrictions as the System's TDA plan, and (2) a 1992 Act "direct rollover," under which any amount that a participant is entitled to receive as a distribution may be transferred through a trustee-to-trustee rollover to an eligible successor plan.

*Implementation of the 1992 Act as to the System's TDA Program*

In October 1993 Trustees notified the participants in the System TDA program that, pursuant to Section 403(b)(8) and (10) as amended by the 1992 Act, the plan would honor requests for rollover distributions from Section 403(b) accounts for amounts not in excess of each participant's December 31, 1988 account balance. That bright line limitation to pre–1989 balances was of course prompted by the effective date of Section 403(b)(11) and its strict limitations upon distributions from TDA funds attributable to a salary reduction agreement. Distinguishing the situation involving a Rev. Rul. 90–24 direct transfer, Trustees found that a "distribution" must take place before a Section 403(b)(8) rollover may occur. Thus any post–1988 funds from a System TDA would be ineligible for rollover treatment until those funds were otherwise available to each participant—that is, a "distribution" must first take place within the limitations of one of Section 403(b)(11)'s triggering events.

Frank contends, however, that his post–1988 contributions should immediately be available for direct rollover pursuant to Section 403(b)(8) and (10). On that score Frank insists that the 1992 Act amendments to Section 403(b) revised the rollover rules and effectively repealed the Section 403(b)(11) early withdrawal restrictions to the extent that Section 403(b)(11) might preclude a direct rollover. Frank does not argue that the 1992 Act repealed Section 403(b)(11) as to non-rollover distributions, but he rather asserts a "fundamental difference between the access restrictions under § 403(b)(11) that *must* be satisfied in order for a plan participant to effectuate *taxable* withdrawals for reasons other than retirement income with the access required under provisions of the [System TDA plan] in order for withdrawals to be 'eligible rollover distributions' under

§ 403(b)(8)(A)(i)" (Frank Br. 2, emphasis in original).

Essentially Frank seeks to loosen the ties that Section 403(b)(11) had placed on the favored tax treatment conferred on certain taxpayer-initiated rollovers—constraints that conditioned the availability of that favored treatment by requiring strict limitations on the timing or circumstances of withdrawals from the original tax-favored plans. And he hopes to do so not by pointing to any overt congressional enactment to that effect, but instead by attempting to draw a truly strained inference from the 1992 legislation, the direct language and purpose of which were entirely different. Merely stating the matter in those terms highlights the steepness of the hill that Frank must climb.

Beginning in February 1994 Frank began an informal exchange of correspondence with the IRS in connection with his reading of Section 403(b)(8). On this appeal the record reflects four instances in which the IRS specifically responded to Frank's requests for general information pertaining to Section 403(b)(8) rollovers. None of those communications concurred with Frank's position that the 1992 Act amendments either obligated (or permitted) the System to roll over post–1988 TDA funds without compliance with Section 403(b)(11). On the contrary, the IRS correspondence emphasized that "certain requirements must still be satisfied pertaining to the access of funds eligible for rollover treatment" and that "before distributions can be considered to be eligible rollover distributions, these funds must be accessible under the provisions of the plan" (Frank Ex. VIII).

Undeterred by the repeated and consistent position of both Trustees and the IRS, Frank brought suit against Trustees on March 6, 1995. Frank's Complaint alleged that the 1992 Act amendments to Section 403(b)(8) had repealed the Section 403(b)(11) early withdrawal requirements that must be satisfied before a distribution may be afforded direct rollover treatment, so that Trustees'

continued adherence to Section 403(b)(11) was in violation of those amendments. In response to that action, Trustees issued a special query to the Employee Plans Division of the IRS as to whether TDA amounts ineligible for distribution by reason of Section 403(b)(11) were nonetheless "eligible rollover distributions" for purposes of Section 403(b)(8). In a May 19, 1995 Special Ruling the IRS responded (5A Pension Plan Guide (CCH) ¶ 17,392R):

> The UCA did not eliminate the distribution restrictions of section 403(b)(11) of the Code on amounts received pursuant to a salary reduction agreement from section 403(b) annuities. Thus, for example, since section 403(b)(11) generally restricts the distribution from a section 403(b) annuity of post–1988 salary reduction contributions, an employee may not make a direct rollover of contributions to which such restrictions apply. An employee may, however, direct the transfer of funds between section 403(b) annuity arrangements provided the requirements of Rev. Rul. 90–24 are met since a transfer would not constitute an actual distribution under section 403(b)(1) of the Code.[3]

As we said at the outset, on October 16, 1996 the District Court granted Trustees' summary judgment motion and dismissed the Complaint and this action, while denying Frank's cross-motion for summary judgment. Frank appeals that final judgment.

### Construction of the Relevant Statutes

▬ We review the District Court's grant of summary judgment de novo (*Duraflex Sales & Serv. Corp. v. W.H.E. Mechanical Contractors*, 110 F.3d 927, 932 (2d Cir. 1997)). That standard of review is particularly apt here, where the only contested issue is one of law (*United States v. Ribadeneira*, 105 F.3d 833, 834 (2d Cir.1997) (per curiam)). This appeal presents a single contested issue: Was the District Court correct in determining that the 1992 Act amending Section 403(b)(8) did *not* impliedly repeal the Section

---

**3.** [Footnote by this Court] Of course that Special Ruling and the four informal responses from the IRS to Frank provide no precedential authority. Each of those determinations carried with it the IRS' boilerplate language:

> This is not a ruling and may not be relied upon with respect to any specific transaction.

403(b)(11) early withdrawal requirements, which must otherwise be satisfied before a TDA distribution may qualify for direct rollover treatment?

As stated in the preceding section, the IRS' position in correspondence with the litigants has been that TDA funds must first become available to Frank through a *distribution* in conformity with Section 403(b)(11) before a Section 403(b)(8) direct rollover of those funds is permissible. Other IRS statements have more broadly announced that principle. For example, the IRS said in its proposed examination guidelines pertaining to tax-sheltered annuities (1995 WL 223244, EXAMINATION OF § 403(b) PLANS, ch. X, pt. B, announced at 1995–19 I.R.B. 14):

> In a rollover from a 403(b) plan, an employee's interest in the 403(b) plan is distributed and reinvested in another arrangement.... There must be a distributable event under the plan to have an eligible rollover distribution.

Far more significantly, an official Treasury Regulation firmly supports Trustees' position. That regulation, 26 C.F.R. § 1.403(b)–2, which in part contains the IRS' questions and answers as to eligible rollover distributions,[4] states (emphasis added):

> Q–2: Is a section 403(b) annuity required to provide the direct rollover option described in section 401(a)(31) as a distribution option?
>
> A–2: (a) *General rule.* Yes.... For purposes of determining whether a section 403(b) annuity has satisfied this [Section 403(b)(10) ] direct rollover requirement, the provisions of [Treas. Reg.] § 1.401(a)(31)–1 apply to the section 403(b) annuity as though it were a plan qualified under section 401(a) unless otherwise provided in this section. For example, as described in § 1.401(a)(31)–1, Q & A–14 a direct rollover from a section 403(b) annuity to another section 403(b) annuity is a *distribution and a rollover* and not a transfer of funds between section 403(b) annuities and, thus, is not subject to the

applicable law governing transfers of funds between section 403(b) annuities.

 As we recently reemphasized in *E. Norman Peterson Marital Trust v. Commissioner,* 78 F.3d 795, 798 (2d Cir.1996):

> In reviewing the validity of a Treasury Regulation, we accord the Commissioner's interpretation of the statute substantial deference, applying a strong presumption in favor of validity.

Although "the deference paid to Treasury regulations is not boundless" (*id.,* quoting *Goodson–Todman Enters., Ltd. v. Commissioner,* 784 F.2d 66, 74 (2d Cir.1986)), a "regulation should 'be declared invalid only if it is unreasonable or clearly contrary to the language or spirit of the statute it purports to implement'" (*id.,* quoting *Goodson–Todman* ).

Frank makes no suggestion that the IRS' interpretation of Section 403(b)(8) is contrary to the statutory language. Quite to the contrary, that section speaks plainly of the rollover of a "distribution" from a Section 403(b) contract, and TDA "distributions" are precisely the target of Section 403(b)(11)'s withdrawal restrictions. Indeed, Rev. Rul. 90–24 was necessitated by a very similar reading of the Code. Absent that Ruling's nonstatutory basis for permitting transfers among equally-restrictive Section 403(b) plans, Section 403(b)(11)'s strict limitation upon "distributions" would have precluded even the tax-free exchange of annuity contracts envisioned by Section 1035(a)(3).

Further, Frank's suggestion that the IRS' application of Section 403(b)(11) to Section 403(b)(8) rollovers somehow thwarts the purpose of the 1992 Act through a "simple supplantation of one set of complex rollover rules and restrictions for another" (Frank Br. 7) is wholly unfounded. Although subject to Section 403(b)(11)'s restrictions upon early withdrawal, 1992 Act's liberalized rollover rules are quite meaningful. For example, pre–1989 Fund contributions are not subject to the restrictive distribution limitations of Section 403(b)(11). Hence, just as

4. As we noted in *Hurwitz v. Sher,* 982 F.2d 778, 782 n. 4 (2d Cir.1992):

Some of the Treasury Regulations are written in question and answer form. This novel format does not alter their weight as regulations.

**16**

Trustees properly notified all System TDA participants, any portion of those pre–1989 funds is now available for immediate rollover without the restrictive triggering devices and percentage limitations found in the pre–1992 Act version of Section 403(b)(8). Additionally, the 1992 Act's rules will be quite significant to many distributees who *do* satisfy the Section 403(b)(11) distribution requirements. As explained in H.R. Conf. Rep. No. 102–650, at 43 (1992), *reprinted in* 1992 U.S.C.C.A.N. 200, 267, more flexible rollover rules are of particular benefit to distributees whose Section 403(b) plans provide for large single-sum distributions upon a triggering event such as retirement. Under the 1992 Act revisions to Section 403(b)(8), distributees may obtain significant tax advantages through deferral or strategic planning of income recognition through the flexible rollover provisions.

Ultimately it is plain that Frank's position impermissibly entangles the restrictive rollover triggering events of the former Section 403(b)(8) that were eliminated by the 1992 Act with the distribution restrictions of Section 403(b)(11) that are still very much in effect. For under Section 403(b)(8) and (10) a TDA participant now has substantially more ability to roll over fund distributions to another Section 403(b) plan or an IRA than he or she did before the 1992 Act. But as Section 403(b)(11) and the numerous IRS proclamations on this matter dictate, those rollovers are simply not possible until the TDA participant is first entitled to distributions from the fund. When the 1992 Act eased the applicable rollover rules of Section 403(b)(8), it did nothing to affect the prerequisite distribution requirements of Section 403(b)(11).

Frank has not satisfied any of the enumerated distribution requirements of Section 403(b)(11). Therefore he cannot now compel Trustees—in contravention of the System's TDA Plan and in violation of Section 403(b)(11)—to make a distribution from his post–1988 contributions. We AFFIRM the judgment of the District Court.