**John HEMPHILL, Plaintiff–Appellant,**

v.

**Harold SCHOTT, NYC Police Officer; Thomas DiMuro, NYC Police Officer, Defendants–Appellees.**

**Docket No. 96–2793.**

United States Court of Appeals, Second Circuit.

Argued Nov. 24, 1997.

Decided April 10, 1998.

Alicia Wade, New York City (Douglas F. Broder, Coudert Brothers, of counsel), for Plaintiff–Appellant.

Julian L. Kalkstein, Assistant Corporation Counsel, New York City (Paul A. Crotty, Corporation Counsel of City of New York, Larry A. Sonnenshein and Elizabeth A. Wright, Assistant Corporation Counsel, of counsel), for Defendants–Appellees.

Before OAKES and WALKER, Circuit Judges, and BRIEANT,* District Judge.

OAKES, Senior Circuit Judge:

John Hemphill appeals from an order of the United States District Court for the Southern District of New York, Lewis A.

* The Honorable Charles L. Brieant, District Judge of the United States District Court for the South-

ern District of New York, sitting by designation.

Kaplan, *Judge,* granting summary judgment to Defendants Harold Schott and Thomas DiMuro, New York City police officers ["the Officers"], in a suit Hemphill brought against them under section 1983 of the Civil Rights Act of 1871, 42 U.S.C. § 1983. Acting *pro se,* Hemphill sued Officers Schott and DiMuro, and others, alleging that they violated his right under the United States Constitution not to be subjected to excessive force when Officer Schott shot him, and when the Officers allowed Angel Torrado, a civilian, to shoot him, prior to his arrest for armed robbery. Hemphill argues that the district court erred in determining that his claim presented no material issues of fact, and that the district court abused its discretion in refusing to allow him to amend his complaint. The Officers argue that summary judgment was properly granted, because the undisputed facts establish that their actions in the course of arresting Hemphill conformed to the requirements of the Fourth Amendment, and that any facts Hemphill claims to be in dispute are precluded by their prior determination in a criminal preceding against Hemphill. The officers also argue that they enjoy qualified immunity from suit because the undisputed facts establish that their actions in effecting Hemphill's arrest were objectively reasonable, and that the district court properly denied Hemphill's motion to amend his complaint because any such amendment would have been futile. We agree with Hemphill that his claim presents material issues of fact, so that the Officers are not entitled to summary judgment, either on the basis of qualified immunity or on the merits; we also agree that Hemphill ought to be allowed to amend the allegations of his original complaint. We therefore reverse the decision of the district court granting summary judgment and remand this case for further proceedings.

## I. Facts

Hemphill alleged in his original *pro se* complaint that on January 16, 1992, New York City Police Officer Harold Schott shot Hemphill four times in a parking lot and that Sergeant DiMuro acted in concert with Schott in this action. Hemphill also alleged that the Officers "drove [former police officer Angel Torrado] around for ten minutes or more" and that the Officers "conspired and acted unlawful with another by giving a 9 mm Glock handgun to Angel T[orr]ado who shot ... Plaintiff several times." [1] Hemphill claimed that the conduct of the Officers constituted "unlawful action ... to deprive[ ] Plaintiff of [l]ife and [l]iberty, ... [e]xcessive [f]orce, unnecessary use of force ... [and] malicious, sadistic[ ] abuse of official authority." He alleged severe injuries and requested compensatory and punitive damages. In Hemphill's reply to the defendants' motion for summary judgment, Hemphill alleged that his arms were raised in the air when the bullets entered his body, and he attached as exhibits photographs of the entry and exit wounds caused by the gunfire, including an entry wound located on the inside of his right arm with a corresponding exit wound on the outside of the arm, as support for this contention.

In the Officers' version of the events, they came to the scene of a drug store robbery to find the drug store manager, Angel Torrado, a retired police officer, shooting bullets into the side of a jeep that contained the fleeing robber. The robber had shot him in the leg with a machine gun. The Officers recognized Torrado as a former officer and acquaintance of Officer Schott. They asked Torrado if he would like to go to the hospital, but Torrado refused, saying he wanted to "get them." The Officers allowed Torrado to join them in a chase of the jeep, which lasted about ten minutes. The Officers learned by radio that the jeep had stopped near a parking lot. Officer Schott stopped the police car at the parking lot, and the Officers ran to the lot, followed by Torrado. Officer Schott claims he then recognized Hemphill running in the parking lot from seeing him when Torrado was shooting at the jeep. Torrado yelled, "Watch out, he has a machine gun." Officer Schott claims that he then twice yelled in a loud voice, "Police, don't move, get your

---

**1.** Hemphill originally named Angel Torrado as a defendant in this action. The district court dismissed the complaint against Torrado without prejudice for failure to make timely service. Hemphill does not appeal this aspect of the district court's order.

hands up," but that Hemphill crouched, pivoted his body from left to right, and furtively reached toward his waist. Officer Schott then shot Hemphill four times. (Although nine bullets were removed from Hemphill's body at Harlem Hospital, only four bullets were missing from Officer Schott's gun.)

On June 28, 1996, Hemphill filed a motion to amend his complaint to include more details of his version of the events of his arrest.[2] In his amended complaint, Hemphill alleged that he was selling heroin at a housing development, heard sirens, and fled to a nearby parking lot to hide his money and drugs. Hemphill heard a voice call out "Stop!" and Hemphill pointed at himself and asked, "Who, me?" He heard someone yell, "Put your hands up!" He put up one hand and then the other. As he was complying with the orders, Hemphill heard someone yell, "He has a grease gun!" He then heard gunfire and felt extreme pain throughout his body. Moments later someone ran up to him and kicked him in the forehead, as he was still upright on his knees. Hemphill also added details regarding Torrado's accompanying the Officers to the scene of his arrest. Hemphill alleged that although Torrado stated under oath that he did not fire his gun, expert ballistics and medical testimony from his criminal trial revealed that the most serious and life-threatening wound was caused by a bullet from Torrado's gun, which Torrado fired at him in the parking lot. Hemphill also alleged that at no time did any of the Officers see a weapon on or near him, and that no weapon was recovered from the scene.

After his arrest, Hemphill was tried and convicted of two counts of robbery in the first degree, robbery in the second degree, and criminal possession of a weapon in the second degree. *People v. Hemphill*, Ind. 239/92 (N.Y.Sup.Ct.1993).

## II. Discussion

### A. Standard of Review

We review the district court's grant of summary judgment de novo. *Frank v. Aar-*

*onson* 120 F.3d 10, 14 (2d Cir.1997). To prevail on a motion for summary judgment, the moving party must show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). In deciding such a motion, the district court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Giano v. Senkowski*, 54 F.3d 1050, 1052 (2d Cir. 1995).

### B. Disputed Facts

While the Officers acknowledge that Hemphill's version of the facts differs from theirs, they argue that Officer Schott's decision to shoot Hemphill was objectively reasonable under the circumstances, and that no rational jury could find otherwise under the undisputed facts. They claim that Hemphill's admitted action of putting up one hand before the other constitutes ambiguous movement on his part that justified the Officer's use of potentially deadly force. They also argue that the Officers had no duty to protect Hemphill from harm from a third party, Torrado, and that any failure of the Officers to restrain Torrado constituted, at the most, negligence for which no remedy exists under the Constitution. Furthermore, they claim, Torrado testified at Hemphill's criminal trial, in which Hemphill was convicted of armed robbery, that he did not shoot Hemphill, and that Hemphill is estopped from challenging Torrado's testimony in this case.

The Magistrate made factual findings regarding the events that occurred immediately before the shooting and arrest of Hemphill. The Magistrate's report, which the district court endorsed to grant the Officers summary judgment, adopted the police version of important disputed facts. *See* Magistrate's Report and Recommendation, *Hemphill v. Schott*, No. 93 Civ. 8778

---

**2.** Hemphill also moved to add a number of other defendants, as well as other causes of action, but does not appeal the denial of these aspects of his

motion for leave to amend his complaint. Only his claims of excessive force against Officers Schott and DiMuro are at issue on appeal.

**416**

(S.D.N.Y. June 10, 1996). The Magistrate found that Hemphill "led a police cruiser on a chase through upper Manhattan that ended only when the plaintiff's companion crashed the getaway car," *id.* at 12, a matter Hemphill denied in his version of the events. The Magistrate also found that Hemphill made furtive motions at his waist, as if to draw a weapon, immediately before the shooting; Hemphill claimed he made no such motions, but pointed his hands at his chest and asked the question, "Who, me?" *Id.* at 4. The Magistrate found that Officer Schott gave advance warning of his intention to use deadly force if necessary; Hemphill alleged that the shots came without warning, while he was complying with Officer Schott's order. *Id.* at 12. Hemphill claimed he put his hands in the air at the request of the police, and provided medical evidence to support this assertion, but the Magistrate found that "[a]fter firing the initial bullet, Officer Schott noticed that Mr. Hemphill was still reaching his hands into his clothing. Officer Schott then fired his gun three times in rapid succession, hitting Mr. Hemphill and knocking him to the ground." *Id.* at 4–5. Finally, the Magistrate simply ignored Hemphill's allegation that the Officers aided and abetted in Torrado's shooting of Hemphill, by handing an automatic handgun to Torrado and allowing him to accompany them and to get out of the police car at the scene where the police seized Hemphill. Despite Hemphill's allegations regarding the Officers' aiding and abetting Angel Torrado's use of force in the parking lot, the district court stated, "There is no issue before the Court on the motion for summary judgment as to the actions of anyone else who is alleged to have fired at plaintiff." *Hemphill v. Schott*, No. 93 Civ. 8778, at 2 (S.D.N.Y. Sept. 17, 1996).

The trial court adopted the Magistrate's findings, holding that because the Officers' conduct was objectively reasonable under the circumstances, they enjoyed qualified immunity from suit. *Id.* at 1–2.

■ The police argue that because the testimony of the prosecution witnesses returned a conviction, "their testimony should not be subject to factual scrutiny in a subse-

quent civil litigation." They argue that because Torrado testified at the criminal proceeding that he did not fire his gun at Hemphill in the parking lot, we should reject as false Hemphill's claim that the police aided and abetted Torrado to shoot him "because Torrado's version of the events and his credibility passed muster with the criminal jury." It is true that Hemphill is estopped from relitigating facts that were found by the jury in his criminal case. However, we accept only those facts the jury necessarily determined in returning his conviction. Of course, doing so does not require us to accept the testimony of the government witnesses wholesale. While a plaintiff may be estopped in a civil case from relitigating issues previously determined in a criminal case, "[s]uch estoppel extends only to questions '*distinctly put in issue* and *directly determined*' in the criminal prosecution." *Emich Motors v. General Motors*, 340 U.S. 558, 568–69, 71 S.Ct. 408, 414, 95 L.Ed. 534 (1951) (emphasis added); *see also, e.g., Giakoumelos v. Coughlin,* 88 F.3d 56, 59 (2d Cir.1996) (applying New York law of collateral estoppel to require that issues be precluded if necessarily decided in a previous trial).

## C. Excessive Force under the Fourth Amendment

■ Even though Hemphill's version of the events leading to his arrest plainly differs from the Officers', summary judgment would still be appropriate if the disputed facts were not material or were necessarily determined in Hemphill's criminal trial. The Officers argue that Hemphill's claims of excessive force can only be analyzed with respect to the objective requirements of the Fourth Amendment, and that their claims of qualified immunity also depend only upon an objective assessment of the Officers' actions. Although Hemphill did not specify in his complaint which provision of the U.S. Constitution gives rise to his claim against the Officers, the Supreme Court has made it clear that excessive force that is used by officers arresting a suspect ought to be characterized as invoking the protections of the Fourth Amendment, which guarantee citizens the right to be free from unreasonable

seizures of the person. *Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). The Fourth Amendment inquiry is an exclusively objective one, and requires consideration of the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Id.* at 396, 109 S.Ct. at 1872. For the purpose of preventing evasion of arrest, potentially deadly force may only be used "if *necessary* to prevent escape, and if, where feasible, some warning has been given." *Tennessee v. Garner,* 471 U.S. 1, 11–12, 105 S.Ct. 1694, 1701, 85 L.Ed.2d 1 (1985) (emphasis added).

■ The district court committed no error in finding severe the crimes for which Hemphill was convicted, which included assault with a deadly weapon. However, accepting as true, as we must, Hemphill's version of the facts immediately preceding the shooting, Officer Schott's alleged decision to use potentially deadly force upon a suspect who stopped and raised his arms in the air when commanded to do so does not qualify as reasonable under the remaining factors we must consider. While the crime of which Hemphill was suspected was extremely violent, to allow the nature of the crime alone to justify the use of such severe force would thwart a central purpose of the Fourth Amendment limitations on use of force in making arrests, which is to preserve determination of guilt and punishment for the judicial system. *See Garner,* 471 U.S. at 9, 105 S.Ct. at 1700.

■ The Magistrate found that Officer Schott's use of potentially deadly force met the Fourth Amendment's requirements because Hemphill made ambiguous motions rather than putting his hands up as commanded by Officer Schott. However, Hemphill disputes that he made such movements. That Officer Schott may reasonably have suspected Hemphill to be armed would not render shooting him reasonable if, as Hemphill alleges, he stopped and raised his hands in the air when commanded.

■ The facts bearing upon whether Officer Schott's use of potentially deadly force was reasonable to prevent escape remain in dispute as well. Hemphill disputes that he evaded the police in a high-speed chase, and collateral estoppel does not bar him from doing so. While Hemphill was convicted of committing armed robbery, and the Officers claim that they found Hemphill in the parking lot after chasing him there at high speed, the Officers do not indicate any element of any crime for which Hemphill was convicted that would have necessitated a finding that Hemphill evaded the police. Collateral estoppel operates only to prevent Hemphill from asserting facts that were *necessarily decided* in his previous trial. While we might think it probable that the jury in Hemphill's criminal trial found credible the Officers' story about the high-speed chase in order to conclude that Hemphill actually robbed the store with a deadly weapon, the jury did not, of course, make any specific factual findings regarding that chase in finding him guilty of armed robbery. The facts alleged thus properly call into dispute the Officers' version of Hemphill's arrival at the parking lot; according to Hemphill's version, his actions gave rise to no reasonable belief that he would attempt to escape.

Hemphill also disputes that Officer Schott provided warning before shooting. Advance warning is only necessary "where feasible," *Garner,* 471 U.S. at 11–12, 105 S.Ct. at 1701, but the Officers do not appear to claim the circumstances made a warning not feasible in this case. Instead, the Officers assert that Officer Schott did warn Hemphill clearly, twice, but that Hemphill ignored those warnings in favor of making furtive motions at his waist. As with the high-speed chase, none of Hemphill's convictions necessarily involved a factual finding by the jury that Hemphill defied Officer Schott's warning, if he made one, before the shooting.

Thus, apart from the severity of the crime at issue, the remaining requirements that police must meet in order for use of potentially deadly force to be constitutionally reasonable properly remain in dispute. Without disparaging police officers' need to make split-second decisions in extremely danger-

ous situations, Hemphill's statement of facts, construed most favorably to him, describes a constitutionally unreasonable seizure—riddling, if you will—of his person.

Because summary judgment based either on the merits or on qualified immunity requires that no dispute about material factual issues remain, the district court erred by entering summary judgment in favor of Officer Schott. *See Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir.1995); *Oliveira v. Mayer*, 23 F.3d 642, 649 (2d Cir.1994).

### D. Excessive Force under the Due Process Clause

Hemphill does not articulate, on appeal, a theory regarding the liability of Officer DiMuro for the actions of Officer Schott, and he does not directly challenge the Magistrate's and the district court's finding that there is no evidence that Officer DiMuro had personal involvement in Officer Schott's use of force against Hemphill at the scene of his arrest. However, Hemphill does assert that Officer DiMuro returned to Torrado the handgun with which Torrado shot him, and generally asserts on appeal that this action constituted a deprivation of his rights to Due Process under the Fourteenth Amendment to the U.S. Constitution.

█ The Officers argue that because Hemphill's allegations of excessive force occurred in the context of his arrest, his claims must be analyzed exclusively under the requirements of the Fourth Amendment. They also argue that Officer DiMuro was, at worst, negligent in returning the gun to Torrado; negligent conduct does not suffice to establish liability under § 1983. *Daniels v. Williams*, 474 U.S. 327, 332, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986). Furthermore, the Officers claim that the Supreme Court's holding in *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 195, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989), that the Due Process Clause creates no affirmative duty in state actors to protect people from the actions of private third parties, precludes any finding of liability based on either Officer DiMuro's or Officer Schott's failure to protect Hemphill from the actions of Torrado.

█ While the Officers correctly argue that excessive force used by officers arresting suspects implicates the Fourth Amendment's prohibition on unreasonable seizures, rather than the Fourteenth Amendment's guarantee of substantive due process, *see Graham*, 490 U.S. at 394, 109 S.Ct. at 1871, Hemphill does state a claim of a violation of the Fourteenth Amendment with respect to his allegations that the Officers aided and abetted Torrado unlawfully to shoot him. This court has held that outside the context of an arrest, a plaintiff may make claims of excessive force under § 1983 under the Due Process Clause of the Fourteenth Amendment. *See Rodriguez v. Phillips*, 66 F.3d 470, 477 (2d Cir.1995) ("One reading of *Graham* suggests ... that those relatively unusual excessive force cases falling beyond the ambit of the Fourth and Eighth Amendments are redressable only by recourse to state tort law. We do not think such a reading is correct.... [I]n the non-seizure, non-prisoner context, the substantive due process right to be free from excessive force is alive and well.").

One embodiment of this still extant claim for relief from excessive force based in Due Process is the situation in which a state actor aids and abets a private party in subjecting a citizen to unwarranted physical harm. *See Dwares v. City of New York*, 985 F.2d 94, 98 (2d Cir.1993). Thus, where Hemphill alleged in his original complaint that both Officers "aided and abetted" Torrado by handing him an automatic weapon and driving him to the scene of Hemphill's arrest, that these actions were "malicious" and "sadistic[ ]," and that Torrado was "under [the Officers'] control," we analyze Hemphill's claim as one for violation of his Due Process rights under the Fourteenth Amendment. On appeal, Hemphill characterizes his claims generally as invoking the Fourteenth Amendment.

While some of the facts that comprise Hemphill's allegations with respect to the Officers' aiding and abetting Torrado occurred in the "context" of his arrest in a physical sense, the Officers' alleged actions with respect to Torrado form a different kind of claim from excessive force in effecting an

arrest. *Graham*'s holding that excessive force claims in the context of an arrest are to be analyzed under the Fourth Amendment's objective standards does not extend to this unusual situation in which the police officers allegedly engaged in a deprivation of rights coincident with, but distinct from, their arrest of the suspect. Not only did the alleged aid necessarily begin before the Officers and Torrado reached the scene of the arrest, but Torrado, as a civilian, was not himself arresting Hemphill.

Our decision in *Dwares* establishes that the Officers' subjective motivations in returning Torrado's gun do bear upon our determination whether the Officers should be entitled to summary judgment, and that decision also answers the Officers' argument that they were under no obligation to prevent Torrado from shooting Hemphill during the course of his arrest. "[A] state actor may be subject to liability for an action physically undertaken by private actors in violation of the plaintiff's liberty or property rights if the state actor directed or aided and abetted the violation." *Id.* at 98. We held in *Dwares,* that where the state actors actually contributed to the vulnerability of the plaintiff, or where the state actors aided and abetted a private party in the deprivation of a plaintiff's civil rights, a violation of the Due Process Clause does occur. *Id.* at 99.

■ Hemphill's original complaint sufficiently pleads a violation of his Fourteenth Amendment right not to be subjected to the excessive force of a third party who is aided and abetted by a state actor. He pleads that the "Officers conspired ... with another by giving a 9 mm Glock handgun to Angel T[orr]ado who shot [him] several time[s]." Furthermore, the record contains sufficient facts from which a fact finder could infer that Hemphill meets the requirements under the Due Process clause that the Officers' conduct " 'shocks the conscience.' " *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973) (quoting *Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952)). In such a claim, the court looks—to be sure, in a different context—to "such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 1033. We consider Judge Friendly's well-known words to be applicable in the context of an excessive force, as well as a prison inmate's, case. Therefore, in addition to objective factors similar to those we have applied to Hemphill's version of the events of his arrest in analyzing his claim under the Fourth Amendment, the Officers' intentions in returning Torrado's gun and allowing him to accompany them to the scene of Hemphill's arrest bear upon whether those actions violate Hemphill's rights under the Fourteenth Amendment. These intentions create a factual dispute that makes summary judgment inappropriate for either Officer Schott or Officer DiMuro.

■ Because the district court analyzed Hemphill's claim only under the Fourth Amendment, and ignored Hemphill's claims regarding the Officers' aiding and abetting Torrado to shoot him, the district court did not subject the Officers' claim of qualified immunity to analysis under the Due Process Clause. We hold, however, that Hemphill's claim against the Officers under the Due Process Clause should survive a claim of qualified immunity. "Where, as here, a constitutional claim contains a subjective component, many courts have imposed on plaintiffs what they describe as a heightened standard, requiring them to provide specific allegations or direct evidence of the required state of mind in order to avoid summary judgment based on the defense of qualified immunity." *Blue v. Koren,* 72 F.3d 1075, 1082–83 (2d Cir.1995). The doctrine of qualified immunity requires a court to limit its examination of the allegations to the "objective reasonableness" of the state actor's conduct; application of the doctrine to claims in which an element of the violation is an unconstitutional motive or intent therefore creates the difficulty of either denying litigants the opportunity to present proof of that intent, on the one hand, or of severely compromising the goals furthered by the doctrine of qualified immunity, on the other. In order to further the inter-

ests in protecting public officials from frivolous, burdensome litigation without exempting them from liability for constitutional claims that depend on the officials' subjective intentions, we require plaintiffs making a claim that includes an unconstitutional subjective intent to "proffer particularized evidence of direct or circumstantial facts ... supporting the claim of an improper motive." *Id.* at 1084. Here, the record contains sufficient facts from which a jury might infer that the Officers acted for the very purpose of causing Hemphill harm, when they agreed to allow Torrado to accompany them to the scene of the arrest. For instance, the Officers' acquiescing in Torrado's refusal to go directly to the hospital because he wanted to "get them," presents a fact from which a jury could infer the Officers intended to aid Torrado unlawfully to cause Hemphill severe harm.

**E. Amending the Complaint**

■ Hemphill argues that as a *pro se* plaintiff, the district court abused its discretion in disallowing him to amend his complaint to clarify the factual basis of his claim. The district court denied Hemphill's motion for leave to amend his complaint based on its finding that such an amendment would be futile. Although Hemphill moved to add new claims and parties, he challenges on appeal only the district court's decision to disallow leave to amend his complaint to provide more factual details with respect to his claims of excessive force; he no longer seeks to add defendants or claims. Because Hemphill now seeks only to provide more details regarding his claims of excessive force, we do not need to decide whether the district court erred in refusing to allow Hemphill to amend to add parties and claims. Because there is no "apparent or declared reason—such as undue delay, bad faith or dilatory motive ..., repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment," leave to amend the complaint should be " 'freely given.' " *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 229, 9 L.Ed.2d 222 (1962) (quoting Fed.R.Civ.P. 15(a)). No reason appears to justify denying Hemphill leave to amend his viable claims against the Officers for excessive force, so that refusal to allow Hemphill to do so would constitute abuse of discretion. *Id.*

### III. Conclusion

For the above reasons, we reverse the district court's grant of summary judgment to the Officers, remand the case for further proceedings, and instruct the district court to allow Hemphill leave to amend his complaint to allege additional facts in support of his claims of excessive force against the Officers.