Jeffrey A. WALKER, Plaintiff–Appellant,

v.

David JASTREMSKI, et al.,
Defendants–Appellees.

Docket No. 97–2721.

United States Court of Appeals,
Second Circuit.

Submitted Oct. 2, 1998.

Decided Nov. 3, 1998.

Jeffrey A. Walker, pro se, White Deer, PA, for plaintiff-appellant.

Jerome A. Lacobelle, Jr., Deputy Corporation Counsel, City of West Haven, CT (Michael P. Farrell, Corporation Counsel, City of West Haven, on the brief) for defendants-appellees David Jastremski and Charles Buerer; Richard Blumenthal, Attorney General, and Jane B. Emons, Assistant Attorney General, State of Connecticut, of counsel, for defendant-appellee Frank Halloran.

Before: CARDAMONE, CALABRESI and STRAUB, Circuit Judges.

PER CURIAM:

 Jeffrey A. Walker, *pro se* and *in forma pauperis*, appeals from the dismissal of his action brought under 42 U.S.C. § 1983 against David Jastremski, Charles Buerer, Frank Halloran, and Tjandra Tedja. Walker alleges that the defendants conspired to fabricate and distort evidence that was used to bring a criminal prosecution against him. The United States District Court for the District of Connecticut (Nevas, *J.*) granted summary judgment for the defendants, ruling that Walker's complaint was barred by the applicable statute of limitations. We believe that the district court's decision was correct when considered in light of the arguments advanced at that stage of the litigation. On appeal, however, Walker presents

an argument based on the principles of *Houston v. Lack,* 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), and that argument raises the possibility that Walker's claim might indeed be timely.[1] Because deciding the case in light of the *Houston* argument implicates facts not currently available in the record, we remand the case to the district court for additional findings.

## BACKGROUND

Walker is incarcerated in a federal prison in White Deer, Pennsylvania. More than seven years ago, in a proceeding unconnected to his current imprisonment, he was charged in state court in Connecticut with larceny and conspiracy to commit larceny. Those charges were dismissed for lack of sufficient evidence on April 16, 1991. In January or February of 1994, while in jail on another charge, Walker requested that the Connecticut Superior Court send him the records of the 1991 larceny proceeding. He received the records on May 5, 1994.

Walker subsequently filed suit in the United States District Court for the District of Connecticut, alleging that the present defendants had abridged his civil rights in violation of 42 U.S.C. § 1983 in connection with the charges that were dismissed in 1991. Among other allegations, Walker claimed that the defendants falsified an affidavit, wrongfully procured his arrest, distorted an identification, and engaged in malicious prosecution. On August 1, 1997, a federal magistrate recommended that summary judgment be entered against Walker on the grounds that the statute of limitations had run. The district court subsequently adopted the magistrate's recommendation and dismissed Walker's suit.

Walker now appeals.

## DISCUSSION

We review a grant of summary judgment *de novo. See Frank v. Aaronson,* 120 F.3d 10, 14 (2d Cir.1997).

*Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). We exercise our discretion in the circumstances before us to permit Walker, a *pro se* litigant, to advance his *Houston* argument.

---

1. Under different circumstances, it would be appropriate to deem that argument waived because it was not advanced in the district court. The appellate court may decide, however, in its discretion, to hear such arguments. *See, e.g., Bornholdt v. Brady,* 869 F.2d 57, 68 (2d Cir.1989);

The larceny charges against Walker were dismissed on April 16, 1991. It follows that any injury he suffered in connection with the wrongdoing he alleges must have accrued by that date. When a § 1983 action is filed in the District of Connecticut, it is subject to a three-year statute of limitations. *See Lounsbury v. Jeffries*, 25 F.3d 131, 134 (2d Cir.1994). Absent tolling, therefore, the latest date on which Walker could have filed a timely complaint was April 16, 1994. No complaint was entered as of that date.

Walker alleges that he did not know about the violations of his rights until May 5, 1994, when he received the record. But a plaintiff's ignorance of injury does not toll a statute of limitations if, with the exercise of reasonable diligence, the plaintiff could have learned of the wrong prior to the date of actual discovery. *See Keating v. Carey*, 706 F.2d 377, 382 (2d Cir.1983). And there is no indication that Walker could not, at an earlier date, have found out about the wrongs he currently alleges. On the contrary, there is every reason to think that, had he requested his record earlier, he would earlier have learned what he now claims was in it.

In the proceedings before the magistrate below, Walker argued that the defendants had fraudulently concealed information about their violations of his rights. The magistrate found, however, that this allegation was merely conclusory. Walker made no showing that such concealment had occurred. The magistrate therefore rejected Walker's argument that the statute of limitations should be tolled for reasons of a conspiracy of concealment against him, and the district court granted summary judgment for the defendants accordingly. We believe that the district court's decision not to toll the statute for reasons of fraudulent concealment was correct.

On appeal, however, Walker makes a new argument for tolling. He contends that his being incarcerated and without counsel delayed his discovery of the defendants' wrongful conduct. Walker acknowledges that imprisonment *simpliciter*, like unawareness *simpliciter*, does not toll a statute of limitations. He argues, however, that under the principles of *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), an incarcerated *pro se* plaintiff is entitled to tolling when his inability to travel to a courthouse or personally to supervise the judicial process slows his progress through the legal system.

*Houston* was a case about a prisoner who petitioned *pro se* for a writ of habeas corpus. Within the applicable statute of limitations, he delivered his petition to the prison officials and asked them to forward it to the appropriate district court. The district court did not record the filing of the petition until after the limitations period had expired. The Supreme Court held that the petition was timely. *See id.* at 270, 108 S.Ct. 2379. The Court explained that *pro se* prisoners "cannot take the steps other litigants can take to monitor the processing" of their interactions with the judicial system. *Id.* They cannot travel to courthouses or direct their attorneys to do so, and they must therefore rely on potentially adverse intermediaries—*i.e.*, prison officials—and "the vagaries of the mail and the clerk's process" when hoping to do their legal business in a timely fashion. *Id.* at 271, 108 S.Ct. 2379.

On the theory that the time that elapsed between his requesting and receiving his record is analogous to the time that elapses between a habeas petitioner's delivering his petition to prison officials and that petition's being duly filed with the court, Walker contends that he is entitled to equitable tolling. Like the habeas petitioner, Walker could not go personally to the courthouse where his records were kept, nor, being without counsel, could he dispatch his legal representative. Time would necessarily go by while he waited to receive the records he requested, and he would be helpless to counteract any delays that slow-moving mail or agents of the prison or the court might cause.

It is possible, then, that this case raises a question of first impression: whether the rule of *Houston* applies to the lag between the time when a prisoner delivers a request for a court record to prison officials and the time when he receives that record. But we do not now decide that question, because it is

unclear from the record whether the question actually arises on the facts of Walker's case.

If Walker's legal theory were correct, then the maximum amount of tolling to which he could be entitled would be equal to the period during which his being *pro se* and incarcerated delayed his learning of what was in his record—in other words, the amount of time between his request that the Superior Court send him his record and his actual receipt of that record. Unfortunately, it is not clear how much time that was. Walker requested his file sometime in January or February of 1994, but the exact date does not appear in the record before us. Walker received his record on May 5 of that year. If, hypothetically, Walker requested his record on January 1, the toll to which he would be entitled on a *Houston* theory would be 124 days, *i.e.*, the time from January 1 to May 5. If Walker requested his record on February 28, the toll to which he would be entitled would be only 66 days. It follows that a *Houston* toll would extend Walker's deadline for filing to sometime between June 21 and August 18, 1994. But without knowing the date on which he requested his record, it is not possible to know when the limitations period finally ended.

A parallel uncertainty clouds our understanding of when Walker's complaint was actually filed with the district court. According to Walker's brief, the suit was filed on September 6, 1994—a date beyond even the latest possible *Houston* extension of the limitations period. In the proceedings below, September 6 was taken as the date of filing. In at least one other place in the record, however, there is a reference to the complaint's having been received by the district court on July 18, 1994. The complaint itself bears two date stamps, one with the September 6 date and one with a date in July. And indeed, on a *Houston* theory, we also need to know the timing of another event: the date on which Walker gave his complaint to prison officials and asked them to send it to the appropriate court.

We cannot know whether Walker's *Houston* argument is germane without knowing when he requested his record and when he turned over his complaint. We therefore remand the case to the district court with instructions to determine—as best it can—the dates on which those two events occurred.

## CONCLUSION

So much of the district court's opinion as rejected Walker's claim for tolling based on fraudulent concealment is affirmed. The order to close the case is vacated, and the case is remanded to the district court for further proceedings in accordance with this opinion. This panel will retain jurisdiction of future appellate proceedings in the case.