Gabriel GARCIA

v.

Robert GASPARRI

No. 3:00CV1576(JBA).

United States District Court, D. Connecticut.

March 12, 2002.

John R. Williams, Dawne Westbrook, Williams & Pattis, New Haven, CT, for Plaintiff.

Barbara Brazzel–Massaro, Office of the City Attorney, Bridgeport, CT, for Defendant.

### RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DOC. # 25]

ARTERTON, District Judge.

This suit was brought by Gabriel Garcia against Robert Gasparri, a detective in the Bridgeport Police Department in Connecticut. In February 1999, Garcia was arrested pursuant to a warrant sought by Gasparri, which alleged that Garcia had perpetrated a robbery. After being acquitted of the charges[1] by a jury, Garcia brought this 42 U.S.C. § 1983 action for false arrest and malicious prosecution, as well as for intentional infliction of emotional distress under Connecticut law. Garcia alleges that Gasparri procured the arrest warrant from a Superior Court Judge by recklessly withholding and concealing evi-

---

1. Garcia was prosecuted on one count of criminal conspiracy, two counts of criminal attempt to commit robbery in the first degree, three counts of robbery in the first degree, one count of carrying a pistol without a permit, and one count of threatening. (Pl.'s Am. Compl. ¶ 12.)

dence that was material to a determination of probable cause, and that the judge would not have issued the warrant for his arrest if the information were included.

Gasparri has moved for summary judgment on all of the plaintiff's claims, claiming that the undisputed facts demonstrate that there was probable cause to arrest Garcia. Alternatively, he argues that he is entitled to qualified immunity.

For the reasons set out below, the Court grants Defendant's Motion for Summary Judgment.

## I. Standard

Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing that there is no genuine issue of material fact in dispute will be satisfied if he or she can point to an absence of evidence to support an essential element of the nonmoving party's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his or her favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party").

When deciding a motion for summary judgment, " 'the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), *citing United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). However, a party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading." Fed. R.Civ.P. 56(e).

## II. Factual Background

On July 15, 1998, five friends, sitting in an area by the Long Island Sound known as St. Mary's By The Sea, were robbed at gunpoint by a man and a woman. The male robber brandished a silver handgun and took money and jewelry from the five victims.[2] After the robbery, the victims stopped a patrol car and reported the robbery. They indicated to the reporting officer that they knew the identities of the individuals who robbed them, and named Gabriel Garcia and Maylene Doyle as suspects. Two of the victims, Conrad and Merly, recognized Garcia from Notre Dame Catholic High School, where they all attended school together.

The next day, Lebedevitch brought a copy of the 1998 Notre Dame Catholic High School yearbook, given to her by Karowski, to the precinct to show the police a photo of Garcia. On July 18, Gasparri was assigned as the detective to investigate the case. He spoke on the phone with Lebedevitch and attempted to contact the other four victims. One of the victims brought a 1997 yearbook from Notre

---

**2.** The victims were Jillian Lebedevitch, Maegan Perry, Jesse Merly, Sean Conrad and Jeremiah Krasowski.

Dame Catholic High School to the precinct to aid in Gasparri's investigation.

Gasparri interviewed Perry on October 17, 1998. During this interview, Perry picked out Garcia from a photo line-up, which used photos from a high school yearbook. Perry was unable to identify Doyle, the alleged accomplice. In November, Gasparri interviewed Lebedevitch. He showed her a photo line-up, using the 1998 yearbook picture of Garcia, but she was not able to pick him out. Lebedevitch had, however, brought a copy of the 1997 school yearbook with her, and showed the photo of Garcia to Gasparri as the man who committed the robbery. Gasparri then assembled a second photo line-up, using the 1997 yearbook photo, from which Lebedevitch positively identified Garcia. Lebedevitch explained to Gasparri that Garcia's hair in the first photo she was shown was different from the way it appeared both at the scene of the crime and in the second photo. Lebedevitch, too, was unable to identify Doyle.

The three male victims never gave statements or positively identified Garcia as the perpetrator. Conrad and Merly had indicated to Gasparri in October that they would provide statements regarding Garcia, but in November they reneged and said that they did not think they could identify the suspect. Krasowski identified Garcia as the male perpetrator in a telephone conversation, but never showed up for his interview appointment with Gasparri.

In his affidavit supporting the application for an arrest warrant for Garcia, Gasparri wrote that there were five victims of the robbery. Further, he noted that Lebedevitch told him that two of the male victims, Merly and Conrad, recognized Garcia from Notre Dame Catholic High School. Gasparri's affidavit also described his interviews with Perry and Lebedevitch, in which they identified Garcia as the male

perpetrator, including Lebedevitch's inability to identify the first photo of Garcia. The affidavit does not describe the circumstances of the three male victims's (Merly, Conrad and Krasowski) failures to provide identifications of Garcia, nor does the affidavit describe the inability of Perry and Lebedevitch to positively identify Doyle.

Based on Gasparri's affidavit, a Judge of the Superior Court of Connecticut issued the arrest warrant on February 2, 1999. Garcia was subsequently arrested and charged in connection with the robbery. He was acquitted of the charges by a jury and thereafter filed this suit.

III. Analysis

A. *Probable Cause*

■ The threshold question for the Court is whether, on the facts alleged, Garcia's right to be free from arrest without probable cause was violated. This question is primary both for a § 1983 false arrest or malicious prosecution analysis and for a qualified immunity analysis. First, the existence of probable cause is a complete defense to a civil rights claim alleging false arrest or malicious prosecution. *Curley v. Village of Suffern,* 268 F.3d 65, 69–70 (2d Cir.2001) ("no factual civil rights claim for false arrest can exist where there is probable cause"), *citing Singer v. Fulton County Sheriff,* 63 F.3d 110, 118 (2d Cir.1995). Second, the analysis for assessing Gasparri's qualified immunity defense requires a determination of probable cause, because the Court first inquires as to whether a constitutional right would have been violated on the facts alleged, and only if the answer is in the affirmative determines whether the officer's conduct, though violative of the defendant's rights, is protected by qualified immunity. *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 2155–56, 150 L.Ed.2d 272 (2001) ("If no constitutional right would

have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."). Thus, in the case at bar, the primary and dispositive question for the Court is whether the undisputed facts establish that Gasparri had probable cause to arrest Garcia.

■ An arrest pursuant to a warrant signed by a neutral judge or magistrate normally carries a presumption that it was made with probable cause. *Artis v. Liotard,* 934 F.Supp. 101, 103 (S.D.N.Y.1996) ("A magistrate's finding of probable cause in issuing a warrant creates a presumption that probable cause existed."); *see also United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965) ("Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to [search] warrants."). And, a plaintiff who argues that a warrant was issued on less than probable cause faces "heavy burden." *Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir.1991), *citing Rivera v. United States,* 928 F.2d 592, 602 (2d Cir.1991). However, "a plaintiff can demonstrate that this right [not to be arrested without probable cause] was violated where the officer submitting the probable cause affidavit 'knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit' or omitted material information, and that such false or omitted information was 'necessary to the finding of probable cause.'" *Soares v. State of Conn.,* 8 F.3d 917, 920 (2d Cir.1993), *quoting Golino,* 950 F.2d at 870–71; *see also Artis,* 934 F.Supp. at 103 (presumption of validity "is rebuttable only though proof of fraud, perjury or the misrepresentation or falsification of ev-

idence"); *Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Recklessness may be inferred where the omitted information was critical to the probable cause determination. *Golino,* 950 F.2d at 871.

■ In civil rights cases involving the claim of false arrest or prosecution without probable cause, a court "put[s] aside allegedly false information, suppl[ies] any omitted information and determine[s] whether the contents of the corrected affidavit would have supported a finding of probable cause." *Soares,* 8 F.3d at 920, *citing Cartier v. Lussier,* 955 F.2d 841, 845 (2d Cir.1992) and *Magnotti v. Kuntz,* 918 F.2d 364, 368 (2d Cir.1990). If probable cause remains, no constitutional violation of the plaintiff's Fourth Amendment rights has occurred. *Id., citing Cartier,* 955 F.2d at 845. In *Soares,* the court "corrected" the arrest warrant affidavit to include information argued by the plaintiff as material to the probable cause determination—that is, that the regulation he allegedly violated was rarely enforced. The court found that the non-enforcement was irrelevant to the question of whether there was probable cause to believe that Soares had violated the regulation. It therefore held that probable cause for the arrest remained and the plaintiff's constitutional right was not violated. *Id.* at 921.

■ In applying the *Soares* analysis here, the Court must "correct" the current affidavit [3] to include the following information, according to the plaintiff: (1) the two male victims who initially recognized Garcia from school and were originally prepared to give statements later changed their minds and said that they did not think they could identify him, and a third victim failed to keep an appointment to give a statement; (2) Perry and Lebedev-

---

**3.** Def.'s Mem. Supp. Summ. J. Ex. B at ¶ 3.

itch, the victims who positively identified Garcia, were unable to identify Doyle, the purported accomplice of Garcia; (3) the photographs used to identify the plaintiff were a few years old.[4] Garcia argues that the addition of this information erodes the probable cause finding, because it shows that Perry and Lebedevitch based their positive identification of Garcia derivatively on information supplied by other victims who failed to provide identifications themselves.

The Court finds, contrary to plaintiff's argument, that no material change in the affidavit is made by including this information. The uncorrected affidavit makes clear that the victims who initially recognized Garcia from the crime scene were not the victims who ultimately identified Garcia through photo line-ups. In his affidavit, Gasparri states that there were five victims in the robbery and *twice* notes that Lebedevitch informed him that two of the male victims, Merly and Conrad, initially recognized Garcia from Notre Dame Catholic High School.[5] Gasparri's affidavit also describes the interviews he had with Perry and Lebedevitch, in which they identified Garcia from photo line-ups as the perpetrator.[6] While the affidavit does not describe the circumstances under which the other victims were not interviewed or did not provide identification of Garcia, the plaintiff does not suggest that the male victims who originally recognized the defendant later said that they were wrong or that they had mis-identified the plaintiff. In fact, the plaintiff does not dispute that the male victims simply said, months after

the incident, that they did not think they could identify Garcia. Also, the fact that Perry and Lebedevitch could not identify the alleged female accomplice, Doyle, is not materially relevant to the reliability of their positive identifications of Garcia. Finally, the dates of the yearbook photos relied are noted in the affidavit.[7] Taken individually or as a whole, the alleged omissions do not amount to a substantial change in the affidavit as it currently stands. Importantly, the allegedly omitted information does not contradict the information contained in Gasparri's application for the arrest warrant. Under the *Soares* analysis, because probable cause remains after adding the allegedly omitted information, no violation of the plaintiff's Fourth Amendment rights has occurred.

The facts in the instant case are inapposite to those in the principal case cited by the plaintiff in opposition to the motion for summary judgment. In *Golino*, the plaintiff asserted a claim for malicious prosecution under § 1983 and the defendant police officer moved for summary judgment on, *inter alia*, the basis of qualified immunity. The Second Circuit concluded that the plaintiff's evidence was sufficient to overcome the presumption of probable cause given to the arrest warrant. Golino had been arrested for murder and the following facts were omitted from the arrest warrant affidavit: (1) most of the eyewitnesses described the killer as thin, whereas Golino at the time weighed 215 pounds; (2) most of the eye-witnesses described the killer as being clean-shaven, whereas Goli-

---

4. Pl.'s Mem. Opp'n Mot. Summ. J. at 1–2. The Plaintiff also argues that the female witnesses whom the defendant claimed made positive identification "were in fact tentative" and known to be such by the Defendant. Pl.'s Mem. Opp. Summ. J. at 1. Plaintiff explained at oral argument that by "tentative," he meant that they were based on the influence of the other victims.

5. Def.'s Mem. Supp. Summ. J. Ex. B at ¶¶ 3, 7.

6. *Id.* at ¶¶ 6–9.

7. *Id.* at ¶¶ 4, 6.

no had a mustache; (3) the one eyewitness who said the killer had a mustache immediately positively identified a person other than Golino as the killer; (4) Golino's prime accuser, his former wife, with whom he had an extremely acrimonious relationship, had made statements inconsistent with those quoted in support of the warrant and had recanted those quoted in support; (5) the police had fingerprints which they strongly believed to have been left by the killer but which did not match the prints of Golino; and (6) the police knew the blood type of the killer but had declined to test Golino for blood type. 950 F.2d at 871–72. The *Golino* court held that these omissions were sufficient to enable the plaintiff to overcome the presumption of validity of the arrest warrant and to merit denying summary judgment on qualified immunity. *Id.* at 872 ("Plainly the information that was misrepresented or remained undisclosed in appellants' presentations in support of probable cause were not immaterial to that question as a matter of law.").

The *Golino* court rejected the defendant's argument in support of summary judgment that if the affidavit were corrected to disclose all the allegedly omitted information and eliminate all the misrepresentations, the affidavit as corrected would show probable cause to arrest and prosecute Golino. *Id.* at 872.[8] Importantly, the facts omitted and the misrepresentations present in the affidavit directly contradicted the information supplied, and they were critical to the determination of probable cause. The fact that the fingerprints suspected to be the killer's did not match Golino's, for example, on its own could have formed the basis for the denial of the arrest warrant application.

In contrast to *Golino*, Gasparri relied on the positive identifications by two victims for his application for a warrant for the plaintiff's arrest. Probable cause exists when an officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution to believe that an offense has been committed by the person to be arrested. *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir.2000). Second Circuit case law makes clear that an officer can base his determination of probable cause on the statements of victims at the scene of the crime. "When information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the person's veracity." *Curley*, 268 F.3d at 70, *citing Martinez*, 202 F.3d 625, 634 (2d Cir.2000) and *Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir.1995).

In *Curley*, the plaintiff argued that he was falsely arrested after a bar-room fight, when in fact he had been helping to stop the fight, not instigating or participating in it. He contended that the credibility of those who claimed that he was a participant was undermined by the fact that they were drunk on the night in question. The court rejected this argument, reasoning first that the plaintiff had not explained to what extent the witness has been drinking, and second, pointing to the fact that the plaintiff had in fact told the officer that in the course of events he had struck a customer at the bar. *Curley*, 268 F.3d at 70. The plaintiff argued in the alternative that with conflicting accounts of the plaintiff's role in the fight, the officer should have done further investigation before arresting him. The court rejected this argument, as well, reasoning that "it [doesn't] matter

---

**8.** The *Golino* court did not formally apply the *Soares* analysis of "correcting" the affidavit, as *Golino* was decided prior to *Soares*. How-ever, *Golino* is one of the principal cases relied on by the *Soares* court in laying out its framework.

that an investigation might have cast doubt upon the basis for the arrest." *Id., citing Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir.1989).

■ The facts of *Curley* speak to the reality that law enforcement officers must rely on statements of victims of crime in order to perform their job and that victims, in turn, experience significant stress in connection with crimes that are perpetrated against them. The confusion and stress surrounding the participants and victims in the bar-room brawl mirrors that of the victims in the armed robbery in the instant case, where a group of people were suddenly yanked from their social activity into several terrifying minutes, of which they were later asked to cogently and consistently remember the details. It is unrealistic to think that a recollection of such events will be flawless. The degree of flaw inherent in the task underlies the dividing line between probable cause and reasonable doubt, which in turn highlights that an acquittal is not to be equated with the absence of probable cause. Garcia was acquitted for the robbery—a jury found that there was reasonable doubt as to whether he had committed the crime. The standard for whether there was probable cause to *arrest* him for the robbery, however, is markedly different. The same evidence can be insufficient for one but sufficient for the other:

> The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released. Nor are the manifold procedural protections afforded criminal defendants under the Bill of Rights 'without limits.' 'Due process does not require that every conceivable step be taken, at whatever cost, to eliminate the possibility of convicting an innocent person.' *Baker v. McCollan*, 443 U.S. 137, 145, 99 S.Ct. 2689, 61

L.Ed.2d 433 (1979), *quoting Patterson v. New York*, 432 U.S. 197, 208, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977).

In the case at bar, Gasparri based his request for an arrest warrant on the positive identification of the plaintiff by two victims. His affidavit noted that were five victims in the robbery and described the way in which the two victims ultimately identified Garcia. Based on the information supplied in the affidavit, a Superior Court judge signed the arrest warrant. When "corrected" by adding to the affidavit the information that the plaintiff alleges was omitted and critical, it is not changed materially. The omitted information is either available in the current affidavit by way of easy inference or it is not relevant to the probable cause finding. In no way does the omitted information directly contradict the information in the affidavit as it stands, nor is it relevant to the probable cause determination. Therefore, the undisputed facts show that Gasparri had probable cause to arrest Garcia. As a result, Garcia's constitutional right to be free from arrest without probable cause was not violated. There are no genuine issues of material fact for a jury to consider.

As an alternative ground for summary judgment in his favor, Gasparri argues that he is entitled to qualified immunity. Inasmuch as the Court has concluded that Gasparri did not violate Garcia's constitutional rights on the facts alleged, the Court need not address this claim.

**B.** *Intentional Infliction of Emotional Distress*

■ The plaintiff also claims that the Gasparri recklessly or intentionally subjected him to severe emotional distress in violation of Connecticut law. In order to succeed on this claim, the plaintiff must establish four elements: (1) that Gasparri

intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that Gasparri's conduct was extreme and outrageous; (3) that Gasparri's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by Garcia was severe. *Petyan v. Ellis,* 200 Conn. 243, 253, 510 A.2d 1337 (1986). "[T]he rule which seems to have emerged is that there is liability for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." *Id.* at 254 n. 5, 510 A.2d 1337, *quoting* Prosser & Keeton, Torts (5th Ed. § 12, p. 60). Because the Court finds that Gasparri had probable cause to arrest Garcia and that his constitutional right was therefore not violated, Gasparri's conduct cannot be found to be "extreme and outrageous" as a matter of law. *Cf. King v. Cablevision Sys. of S. Conn. Ltd. P'ship,* No. CV 940135727S, 1998 WL 556162, at *6 (Conn.Super.Aug. 24, 1998) ("Inadequate probable cause to bring criminal charges does not and should not connote extreme and outrageous behavior"), *citing Burroughs v. F.F.P. Operating Partners, L.P.,* 28 F.3d 543 (5th Cir.1994).

IV.  Conclusion

For the reasons set out above, the defendant's motion for summary judgment [Doc. # 25] is GRANTED. The Clerk is directed to close this case.

IT IS SO ORDERED.