Albert WRIGHT and David
Compas, Plaintiffs,

v.

Mark SANTOPIETRO, Defendant.

No. CIV.3:00cv1745(AHN).

United States District Court,
D. Connecticut.

Sept. 29, 2003.

David G. Toro, John R. Williams,
Williams & Pattis, New Haven, CT, for
Plaintiffs.

Christopher Arciero, Marcia J. Gleeson,
Sack, Spector & Karsten, West Hartford,
CT, for Defendant.

*RULING ON DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT*

NEVAS, District Judge.

Plaintiffs Albert Wright and David Compas (collectively, "Plaintiffs") have brought suit against Defendant Police Officer Mark Santopietro ("Santopietro") of the Waterbury Police Department ("WPD") for false arrest, unreasonable force, and intentional infliction of emotional distress. Claiming qualified immunity, Santopietro has filed a Motion for Summary Judgment [Doc. # 27] pursuant to Fed.R.Civ.P. 56. For the reasons that follow, the motion is GRANTED.

## BACKGROUND

Based on the record submitted by the parties, the court finds that the following facts are undisputed:[1]

On December 9, 1999, Santopietro was driving on patrol with his partner, Officer Lee Santos, in the City of Waterbury. At approximately 6:30 p.m., Santopietro observed a white Dodge Intrepid parked on a street known for illegal narcotics trafficking. The Dodge Intrepid fit the description of a car used in previous felonies.

Using his police radio, Santopietro contacted the WPD to check the car's registration and learned that the registration corresponded to a green Plymouth Breeze, not a white Dodge Intrepid. At the direction of WPD detectives, Santopietro activated his vehicle's emergency lights; in response, the car pulled over on North Main Street. Shortly thereafter, several WPD officers, including the detectives who had ordered the stop, arrived at the scene. Plaintiffs, middle-aged black males originally from Jamaica, testified that several police squad cars and at least seven other officers besides Santopietro were present at the scene.

The WPD officers ordered Plaintiffs to exit the Dodge Intrepid. With their guns drawn, the officers handcuffed both Plaintiffs, made them lie down in the street, and patted them down for weapons. The officers searched the vehicle, found a knife under the front seat, and removed from Plaintiff Wright a firearm for which he had a valid permit. According to Plaintiffs' deposition testimony, they were handcuffed for approximately five minutes.[2] There is no evidence that Santopietro or the officers hit, punched, or kicked Plaintiffs.

Plaintiffs testified that the officers were looking for two African–American males, one reported to be sixteen and the other eighteen, who were suspects in an attempted-murder investigation. After questioning Plaintiffs and running identification checks on them and Wright's firearm, the officers determined that Plaintiffs were not the suspects they sought. Although Plaintiff Wright was issued an infraction for driving with a suspended license, both Plaintiffs were not charged with any crime and were allowed to leave.[3]

Based on the summary judgment record provided by the parties, Santopietro's sole involvement in this incident other than activating his squad car's emergency lights was preparing the police report. At their depositions, neither Plaintiff could identify Santopietro or describe his physical appearance.

Nevertheless, Plaintiffs contend that Santopietro caused them serious physical and emotional injuries. Plaintiff Wright claims bruises on his wrists from the handcuffs; a generalized injury to his back from being lifted off the ground while wearing handcuffs; and a cold from having to lie in the street. He also claims that the incident gave him frequent nightmares and kept him from finding gainful employment. Similarly, Plaintiff Compas claims

---

1. In support of his motion, Santopietro submitted, among other documents,(1) an affidavit signed by him; (2) a copy of the police incident report prepared by him; (3) excerpts from Wright's deposition transcript; (4) excerpts from Compas's deposition transcript; (5) Wright's discovery responses; and (6) Compas's discovery responses. Plaintiffs submitted no materials in opposition other than their brief.

2. There is no mention in the record about how long this entire incident took.

3. The officers locked Plaintiff Wright's firearm in the Dodge Intrepid's trunk. Wright could not drive away legally because his license was suspended.

to suffer from persistent nightmares and a bruise on his left wrist due to the tightness of the handcuffs. Although both Plaintiffs stated that they saw doctors or chiropractors for their alleged injuries, Plaintiffs have provided no evidence other than their oral testimony to corroborate these claims. Finally, Plaintiffs contend that the emotional trauma from the incident caused substantial economic losses to their property management business. Once again, neither Plaintiff has submitted evidence other than his oral deposition statements to substantiate these economic losses.[4]

### STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. Rule 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 202 (2d Cir.1995). After discovery, if the party against whom summary judgment is sought "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The substantive law governing a particular case identifies those facts that are material with respect to a motion for summary judgment. *See Anderson,* 477 U.S. at 258, 106 S.Ct. 2505. A court may grant summary judgment " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact ....' " *Miner v. Glens Falls,* 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted); *see also United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505), *cert. denied,* 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992).

In considering a Rule 56 motion, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986) (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir.1985)); *see also Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir.1989); *Donahue v. Windsor Locks Board of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir.1987). Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991); *see also Suburban Propane v. Proctor Gas, Inc.,* 953 F.2d 780, 788 (2d Cir.1992).

### DISCUSSION

■ Plaintiffs' claims against Santopietro for unreasonable force, false arrest,

---

4. In fact, at their depositions, Plaintiffs could not identify the addresses of the properties that they once managed and/or owned.

and intentional infliction of emotional distress cannot survive summary judgment because they lack factual support in the record. Moreover, even if the court were to make the unwarranted assumption that Plaintiffs' claims were supported by evidence, Santopietro would still be entitled to qualified immunity. In light of its ruling, the court declines to exercise supplemental jurisdiction over the pendent claim for intentional infliction of emotional distress.[5]

## I. Plaintiffs Have Failed to Show That Santopietro Violated Their Constitutional Rights

█ It is axiomatic that a plaintiff alleging the deprivation of constitutional rights must demonstrate "a tangible connection between the acts of the defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir.1986). If the plaintiff claims that a law enforcement officer is liable because he failed "to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers," *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir.1988), the plaintiff must still provide factual evidence that substantiates those allegations.

Based on the summary judgment record here, the court finds that Plaintiffs have failed to show a tangible connection between Santopietro's acts or omissions and Plaintiffs' alleged injuries. As a threshold matter, Plaintiffs have done nothing to corroborate their injury claims other than to state orally at their depositions that they were injured. The record is bereft of any evidence that the officers at the scene punched, struck, or kicked Plaintiffs in any fashion. More importantly, there is no evidence that Santopietro ever physically touched Plaintiff or was even in a position to intervene when the other police officers were handcuffing or questioning Plaintiffs. Plaintiffs not only could not identify Santopietro from the seven other police officers present, but also have not provided evidence showing how Santopietro's actions and omissions that evening caused their injuries. In sum, Plaintiffs have failed to submit any evidence linking Santopietro to the alleged constitutional deprivations.[6] Accordingly, the court has no alternative but to grant Santopietro's motion for summary judgment.

## II. Even Assuming Plaintiffs Submitted Evidence Showing That Santopietro Had Deprived Plaintiffs of Their Constitutional Rights, He Still Would Be Entitled to Qualified Immunity

Despite its finding in Part I, *supra*, the court shall assume for the sake of argu-

---

5. Plaintiffs' brief in opposition to summary judgment makes one reference to the "denial of equal protection of the laws" (Plaintiffs' Opposition Brief at 1), but does not elaborate further. To the extent Plaintiffs intend to raise an equal protection claim here, summary judgment is granted on this claim as well. Although Plaintiffs seemingly claim that Santopietro targeted them because of their race, there is no such supporting evidence. Rather, the record clearly shows that Santopietro targeted Plaintiffs because of their car's physical description. More specifically, Plaintiffs have not disputed the following key facts: (1) that the white Dodge Intrep-

id fit the description of a car used in previous felonies; (2) that the car's registration matched a green Plymouth Breeze, not a white Dodge Intrepid; and (3) that based on this information, WPD detectives instructed Santopietro to activate his vehicle's emergency lights in order to get Plaintiffs to pull over. Furthermore, there is no record evidence that Santopietro saw that Plaintiffs were black prior to activating his emergency lights.

6. Apparently, Plaintiffs elected not to conduct any discovery on their own initiative, and did not attempt to join any other WPD law enforcement officers to this suit.

ment that Plaintiffs' constitutional rights were violated, and that Santopietro could have intervened to prevent this violation. However, even if the court were to make these unwarranted assumptions, Santopietro would still be entitled to qualified immunity under the facts of this case.

A. *Qualified Immunity*

█ Qualified immunity shields governmental actors from liability for suits brought under 42 U.S.C. § 1983[7] as long as their conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). When "the plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense protects a government actor if it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995).

A right is "clearly established" if its contours are sufficiently clear so that a reasonable official would understand his conduct violated that right. *See McCullough v. Wyandanch Union Free Sch. Dist.,* 187 F.3d 272, 278 (2d Cir.1999). To determine whether a law is "clearly established," courts must consider " '(1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.' " *Shattuck v. Town of Stratford,* 233

F.Supp.2d 301, 308 (D.Conn.2002)(citing *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991)).

B. *False Arrest*

As a general rule, a plaintiff bringing a civil rights claim for false arrest must show that the law enforcement officer in question acted without probable cause because the "existence of probable cause is a complete defense to a civil rights claim alleging false arrest." *Garcia v. Gasparri,* 193 F.Supp.2d 445, 449 (D.Conn.2002) (citing *Curley v. Village of Suffern,* 268 F.3d 65, 69–70 (2d Cir.2001)).

In this case, however, the record discloses that the officers never arrested Plaintiffs, but detained them in a brief, investigatory stop pursuant to *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In the familiar *Terry* case, the Supreme Court permitted law enforcement officers to make brief, investigatory stops based on "reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (quoting *Terry,* 392 U.S. at 30, 88 S.Ct. 1868). Under this standard, an officer, based on the totality of the circumstances, "must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). An officer also may conduct a limited search to discover weapons that a "reasonably prudent [person] in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry,* 392 U.S. at 27, 88 S.Ct. 1868.

7. Title 42 U.S.C. § 1983 provides that any person who, acting under color of law, "subjects or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and the laws" of the United States shall be liable to the injured party in actions in law. 42 U.S.C. § 1983.

Here, even if the court were to assume that Santopietro was involved in detaining Plaintiffs on the evening of December 9, 1999, it would have been objectively reasonable for Santopietro to believe that his actions were lawful on that night. Plaintiffs have not disputed any of the following key facts: (1) that Santopietro, while driving in a section of Waterbury known for illegal drug activity, recognized Plaintiffs' white Intrepid as matching the description of another car wanted in previous felonies; (2) that the white Intrepid was not properly registered; (3) and that WPD detectives then directed Santopietro to stop the car. Based on all these facts, the court finds that even assuming Santopietro was involved in this incident, he would have had a particularized and objective basis for conducting the *Terry* stop. Tellingly so, Plaintiffs have neither claimed nor submitted evidence demonstrating that they were detained for an unreasonable amount of time. Accordingly, because the court finds that Santopietro's conduct was reasonable in light of the totality of the circumstances, the court holds that he would be entitled to qualified immunity on the false arrest claim.

## C. *Unreasonable Force*

█ Next, Plaintiffs claim that their constitutional rights were violated because the police officers pointed guns and handcuffed them during the investigatory stop. As with the false arrest claim, this unreasonable force claim also fails as a matter of law, even if the court assumes *arguendo* that Santopietro was somehow involved in the alleged deprivation of Plaintiffs' constitutional rights.

Claims for excessive force arising from a *Terry* stop are "analyzed under the Fourth

Amendment and its reasonableness standard." *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The issue is "whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397, 109 S.Ct. 1865. The court must look to the facts and circumstances of each case, and the particular use of force "from the perspective of the reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396, 109 S.Ct. 1865.

The summary judgment record discloses that even if the court assumes Santopietro used force against Plaintiffs, he still would be entitled to qualified immunity because the officers that night behaved reasonably under the totality of the circumstances. For example, the officers believed that the occupants of Dodge Intrepid had been previously involved in a serious felony, so the officers made the reasonable decision to draw their guns. There is no evidence, moreover, that the officers at the scene punched, kicked, or used excessive force against Plaintiffs. Furthermore, Plaintiffs could not identify Santopietro from the seven other police officers present at the scene, let alone provide evidence showing that Santopietro's actions (or omissions) caused their injuries.[8] Unsurprisingly so, Plaintiffs have done nothing to corroborate their claimed injuries other than to testify orally at their depositions that they were injured.

Notwithstanding this dearth of supporting evidence, Plaintiffs contend that the instant case is analogous to *McKelvie v. Cooper*, 190 F.3d 58 (2d Cir.1999), in which the Second Circuit held that questions of

---

8. Much to the contrary, Plaintiff Compas claims that his wrist was injured when the handcuffs were being applied, and Plaintiff Wright claims that he suffered back pain when being brought to his feet while wearing handcuffs. The court finds that this amount of force can hardly be considered excessive in light of the circumstances.

fact about the reasonableness of the officers' conduct precluded summary judgment on the qualified immunity issue. The facts of *McKelvie*, however, bear little resemblance to the instant case. Here, Plaintiffs were handcuffed for five minutes and forced to lie down in the street pursuant to a constitutional *Terry* stop; a gun was removed from Plaintiff Wright, and a knife was discovered in their car. In sharp contrast, the *McKelvie* police officers raided a bar pursuant to a search warrant that authorized a search for narcotics and weapons, but did not authorize the search of specific persons. *Id.* at 60. During the raid, those officers kicked McKelvie, pressed a gun to his head, and later struck him in the head with a gun. *Id.* At one point, McKelvie's face was pressed into a corner where the floor and wall met. The officers then probed McKelvie's genitals and anus twice for drugs. On its face, the court finds that there can be no reasonable dispute that *McKelvie* and the instant case involve two extremely disparate factual scenarios with much different levels and types of force. Thus, in finding that *McKelvie* is inapposite to the instant case, the court grants Santopietro's motion for summary judgment on the claim for unreasonable force.

### III. *Intentional Infliction of Emotional Distress*

In light of the ruling on the civil rights claims for which it has original jurisdiction, the court declines to exercise supplemental jurisdiction over Plaintiffs' pendent claim for intentional infliction of emotional distress. *See* 28 U.S.C. § 1367(c)(3); *Spear v. Town of West Hartford*, 771 F.Supp. 521, 530 (D.Conn.1991) ("[A]bsent unusual circumstances, the court would abuse its discretion were it to retain jurisdiction of the pendent state law claims on the basis of a federal question claim already disposed of. . . ."), *aff'd* 954 F.2d 63 (2d Cir. 1992), *cert. denied*, 506 U.S. 819, 113 S.Ct.

66, 121 L.Ed.2d 33 (1992). Accordingly, the court dismisses this claim in its entirety.

### CONCLUSION

For the reasons discussed above, Defendant Santopietro's Motion for Summary Judgment [Doc. # 27] is GRANTED. The Clerk is instructed to enter judgment in favor of Santopietro and close the file.